1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Jose Raul Juarez-Orci,                    No. CV-18-00071-TUC-JAS (EJM)

10             Petitioner,              **REPORT AND**
                                        **RECOMMENDATION**
11   v.

12   David Shinn, et al.,

13             Respondents.

14

15       Petitioner Jose Raul Juarez-Orci filed a pro se Petition for a Writ of Habeas Corpus

16  ("PWHC") pursuant to 28 U.S.C. § 2254 on January 18, 2018. (Doc. 1).[1] Petitioner raises

17  two grounds for relief: (1) denial of due process of law and Petitioner's rights under the

18  Sixth and Fourteenth Amendments due to illegal sentence; and (2) ineffective assistance of

19  counsel ("IAC") at trial, direct appeal, and Petitioner's first post-conviction relief ("PCR")

20  proceedings in violation of Petitioner's rights under the Sixth and Fourteenth

21  Amendments.[2] Respondents filed an Answer contending that the PWHC is untimely, and

22  further that Petitioner's claims are procedurally defaulted without excuse. (Doc. 7).

23  Petitioner filed a Reply alleging that his petition is not time-barred and that his claims are

24  not procedurally defaulted. (Doc. 8). Petitioner further alleges that the sentencing claim in

25  his second PCR petition should not have been precluded by Ariz. R. Crim. P. 32.2(a)

26  ─────────────
    [1] Although the Petition was docketed by the Clerk on February 12, 2018, the Court assumes
27  that Petitioner deposited his PWHC in the prison mailing system on January 18, 2018, as
    indicated by Petitioner's signature on his Petition. (Doc. 1 at 19). In order to give Petitioner
28  the benefit of the earliest date calculations, the Court makes this assumption for all
    other documents filed by the Petitioner and included in the record for the present matter.
    [2] The undersigned will address each of these IAC claims below as sub claims A, B, and C.

1   because the claim was made pursuant to Rule 32.1(c) and therefore exempt from preclusion

2   under Rule 32.2(b).[3]

3        Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter

4   was referred to Magistrate Judge Markovich for a Report and Recommendation. The

5   undersigned finds that Petitioner's PWHC was timely filed. However, as to Petitioner's

6   claims in Ground One and Ground Two, sub claim A, the undersigned finds that

7   Petitioner's claims are unexhausted and procedurally defaulted and barred from this

8   Court's review. As to Ground Two, sub claim B, the undersigned finds that the claim was

9   expressly procedurally barred by the state courts. As to Ground Two, sub claim C, the

10  undersigned finds that ineffective assistance of PCR counsel is not cognizable as an

11  independent ground for relief on habeas review, and to the extent Petitioner asserts sub

12  claim C to excuse the procedural default of his claims pursuant to *Martinez v. Ryan*, 566

13  U.S. 1 (2012), Petitioner's argument fails. The Court further finds that Petitioner does not

14  demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse the

15  procedural default of his claims. Accordingly, the Magistrate Judge recommends that the

16  District Court deny the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Trial, Sentencing, and Appeal

19       A Pima County Superior Court jury found Petitioner guilty of attempted second

20  degree murder and five counts of aggravated assault. (Doc. 7 Ex. D).[4] On November 4,

21  2013 Petitioner was sentenced to the presumptive term of 10.5 years imprisonment on the

22  attempted second degree murder conviction, and concurrent, presumptive terms of

23  imprisonment on the aggravated assault convictions as follows: count two, 7.5 years; count

---

[3] The Arizona Rules of Criminal Procedure were amended effective January 20, 2020. New Rule 32 applies to defendants convicted after a trial or a contested probation violation hearing, and new Rule 33 applies to pleading defendants and defendants who admitted a probation violation or had an automatic probation violation. Because Petitioner's state court actions were filed prior to January 20, 2020 and he had no state court action pending at the time the new rules went into effect, former Rule 32 applies to Petitioner's case and the Court will cite to former Rule 32 throughout this opinion. *See* Arizona Supreme Court Order R-19-0012, available at:
https://www.azcourts.gov/rules/Recent-Amendments/Rules-of-Criminal-Procedure

[4] All exhibit numbers refer to the exhibits attached to Respondents' Answer.

three, 6 years; count four, 6 years; count six, 2.25 years; and count seven, 2.5 years. (Ex. F).

The Arizona Court of Appeals summarized the background of Petitioner's case as follows:[5]

¶ 2 Juarez-Orci and J. were married in 2007 and subsequently had three children. They separated in March 2012, in part because Juarez-Orci did not want J. to "go out" with her friends. According to J., he was "very possessive [and] very jealous," and threatened J. that if she went out, "something would happen to ... the children." He also told her "he didn't want to see [her] anymore, and if he saw [her], he would beat [her] up."

¶ 3 J. entered a domestic violence shelter, and, apparently due to fears that Juarez-Orci would take the children to Mexico and not return, she procured an order of protection. Although she stayed at the shelter at night, she frequently went to her home during the day. In April, J. and two friends arrived at the house, and J. received a call from Juarez-Orci. J. asked him why the front door was bolted, thereby indirectly letting him know she was home, and told him, "[Y]ou know fully well that you can't be over here."

¶ 4 After bringing groceries in, J. went back into the garage to close the garage door and saw Juarez-Orci pull up in his truck and get out "with a look of anger on his face." J. stepped back into the house, closing the door between the house and the garage, and told her friends, "Call the police, he's coming," and began dialing 9-1-1 on her telephone. At that moment, Juarez-Orci "knocked [the door] down," and "fell to the floor" from the force of his entry. He then accosted J. repeating, "[w]e need to talk," and "grabbed [her with] force." J. repeatedly told him to leave, but he held her by the shoulder with one hand and began to stab her with a drywall knife. The first injury was to her face. J. tried to calm Juarez-Orci by embracing him and telling him, "I love you a lot. I'll stay with you." He responded that he "couldn't live ... [w]ithout the children, ... without his family." He then said, "'No,' and threw [her] to the floor."

¶ 5 Juarez-Orci began to hit J., and then grabbed her by her hair and "slam[med]" her face against the floor "[m]any times." J. screamed, and he pulled her head back and put the knife against her neck. She grabbed the knife and the two began struggling over it. At some point the knife was bent. Juarez-Orci then got up, dragged J. by the hair to the kitchen, and began searching through the cabinets. J. got to her feet and tried to prevent Juarez-Orci from opening the drawer containing knives. When

---

[5] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

he opened it, J. ran out of the house and to a neighbor's house. Juarez-Orci then left in his truck.

¶ 6 J. sustained "multiple lacerations" and puncture wounds. She had an 8.5-centimeter laceration extending from her right jaw to her right ear lobe, which required multiple layers of stitches. She also had a neck wound that could have been lethal had it been deeper. On her forearm, J. had an approximately two-inch cut that exposed muscle tissue and required between fifteen to twenty stitches to close. J. further had contusions from blunt trauma, including to her forehead, and various abrasions. Some of J.'s injuries, puncture wounds on her hands and abrasions on her forearm, were reported to be "defensive wounds."

¶ 7 After the attack, Juarez-Orci went to the home of E.P. and eventually told him he had gone to his wife's house and heard his wife and "a couple other women ... talking about him," and "he kicked the door [and] ran inside." Juarez-Orci said he and his wife argued and he remembered "cutting her on the arm." He said he did not remember anything else. E.P. then called 9-1-1. He subsequently told a detective that Juarez-Orci had remembered "stabbing [J.] once in the arm" and had thought he had "stabbed her two or three times."

¶ 8 Police officers found blood on the kitchen floor of J.'s residence and collected two knives, including Juarez-Orci's bent, blood-stained drywall knife. They also searched Juarez-Orci's truck and found his blood-stained shirt and blood stains on the steering wheel and elsewhere in the truck's interior. DNA from the knife blade, Juarez-Orci's shirt, and the steering wheel matched J.'s DNA. Juarez-Orci was thereafter indicted for attempted first-degree murder, aggravated assault with a deadly weapon or dangerous instrument, two counts of aggravated assault causing temporary but substantial disfigurement, first-degree burglary, aggravated assault in violation of a protection order, and aggravated assault committed as an act of domestic violence.

(Ex. J ¶¶ 2–8).

Following his conviction, Petitioner sought review in the Arizona COA. (Ex. H). Appointed counsel filed an opening brief presenting one issue for review: Did the trial court erroneously instruct the jury that Petitioner could commit attempted second degree murder by intentionally or knowingly causing serious physical injury without causing death, when Petitioner's defense was that he did not intend to kill the victim? *Id.* at 58, 69. On January 30, 2015 the COA issued an order affirming in part, reversing in part, and remanding Petitioner's case to the trial court. (Ex. J). The court specifically held that the

1    jury instruction permitting the jury to convict Petitioner of attempted second degree murder
2    based on a finding that he knew his conduct would cause serious physical injury constituted
3    fundamental, prejudicial error warranting reversal because attempted second degree
4    murder required the jury to find that Petitioner had intended to kill the victim. The court
5    reversed Petitioner's conviction for attempted second degree murder and remanded for
6    further proceedings on that charge, and affirmed Petitioner's remaining convictions and
7    sentences. (Ex. J at 113).

8         The State filed a petition for review with the Arizona Supreme Court, which the
9    court denied on May 27, 2015. (Ex. K). No petition for review was filed with the United
10   States Supreme Court. On September 21, 2015, the trial court granted the State's motion
11   to dismiss the attempted murder charge . (Ex. R at ¶ 2; Ex. W at 42).

12   **B.  First Petition for Post-Conviction Relief**

13        On April 21, 2015 Petitioner initiated proceedings in Pima County Superior Court
14   for Rule 32 PCR. (Ex. L). Appointed counsel filed an opening brief on April 25, 2016
15   alleging ineffective assistance of trial counsel for failure to properly cross-examine
16   witnesses or call witnesses on Petitioner's behalf, and failure to introduce exculpatory
17   evidence. (Ex. M).[6] The State filed a Response (Ex. N) and Petitioner filed a Reply (Ex.
18   O). On June 16, 2016 the trial court denied PCR. (Ex. P). The court found that Petitioner
19   had failed to show how trial counsel's actions were ineffective in light of the circumstances,
20   and that counsel's actions at trial were all reasonable trial strategy. *Id.* at 40. The court
21   further found that because Petitioner failed to meet the first prong of IAC under *Strickland*
22   *v. Washington*, 466 U.S. 668 (1984), the court was not required to consider prejudice. *Id.*
23   at 41. The court concluded that Petitioner had failed to establish a colorable claim of relief
24   for IAC and dismissed the petition. *Id.*

25        On August 9, 2016 Petitioner filed a pro se petition for review in the Arizona COA.
26   (Ex. Q at 57). Petitioner argued that he had met the test for IAC under *Strickland* and that

27
28   _____
     [6] One of the arguments was that trial counsel should have established that Petitioner was
     the sole owner of the property and that the victim did not have a legal right to consent to
     search, and that trial counsel should have filed a motion to suppress evidence on this basis.

trial counsel was ineffective for failing to properly cross-examine witnesses and call witnesses for the defense, and for failing to introduce exculpatory evidence. *Id.* at 58–59. Petitioner also argued that the victim's consent to search the home was invalid and that the evidence used to convict Petitioner was seized as an unconstitutional search and seizure and violated the Arizona constitution. *Id.* at 60, 63. Petitioner alleged that his rights to effective assistance of counsel and due process were violated under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Article Two of the Arizona Constitution, and *Strickland v. Washington*. *Id.* at 64. On November 23, 2016 the COA issued a memorandum decision granting review and denying relief. (Ex. R). The court found that Petitioner had identified no factual or legal error that the trial court made in rejecting his IAC claims, and that the trial court correctly concluded Petitioner would not have prevailed on a motion to suppress evidence and that counsel's evidentiary decisions were tactical and could not support a claim of IAC. The COA concluded by adopting the trial "court's thorough and correct ruling." *Id.* at ¶ 4.

Petitioner did not file a petition for review with the Arizona Supreme Court, and on March 1, 2017, the COA issued its mandate.[7]

## C. Second Petition for Post-Conviction Relief

On December 27, 2016, Petitioner filed a pro se notice of PCR in Pima County Superior Court. (Ex. S). Petitioner indicated that he was making a claim under Rule 32.1(d)–(h) of newly discovered material facts that would probably have changed the verdict or sentence, and "ineffective assistance of first right of appeal Rule 32" and cited *Martinez v. Ryan*, 566 U.S. 1 (2012). In his accompanying memorandum, Petitioner alleged that at "his first right collateral proceeding counsel failed to raise the issue" that he was illegally sentenced because the aggravating factors were first used to enhance his sentence and then used to aggregate his sentence above the presumptive sentence. (Ex. S at 8).

---

[7] Respondents omitted this information from the Answer and attached exhibits. However, the undersigned has reviewed the dockets for Petitioner's criminal case in Pima County Superior Court and the Arizona COA. The dockets reveal that following the COA's order granting review and denying relief, Petitioner filed a motion for reconsideration on December 8, 2016, which the COA denied on December 14, 2016. The COA then issued its mandate on March 1, 2017.

On March 2, 2017 appointed counsel filed a Rule 32 petition requesting that the court vacate Petitioner's sentences on Counts Two and Four because: (1) his sentence was illegal under Arizona law; and (2) he did not have effective assistance of counsel as to the sentencing issues. (Ex. T). Counsel argued that Petitioner was denied due process because he received an illegal sentence when the trial court considered aggravating circumstances at sentencing that were also elements of the crime. *Id.* at 17. Counsel further argued that this claim was not precluded under Rule 32.2(a) because it fell under the exceptions permitted by Rule 32.2(b) because it was based on Rule 32.1(c) as a sentence not authorized by law. *Id.* at 21–22. Counsel also argued that Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments and *Strickland v. Washington* because if counsel on Petitioner's direct appeal or first PCR proceedings had raised the sentencing issue, Petitioner would have been entitled to resentencing. *Id.* at 23–24. The State filed a Response opposing the second PCR petition as an untimely successive petition, arguing that Petitioner's claims were precluded under Rule 32.2(a) because they could have been raised on direct appeal or in Petitioner's first PCR petition, and because a claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding. (Ex. U). Petitioner's counsel filed a Reply arguing that the sentencing claim fell within the exception to Rule 32.2(a) permitting claims that would otherwise be precluded if they are of "sufficient constitutional magnitude." (Ex. V).

On May 3, 2017 the trial court issued its order denying the Rule 32 petition. (Ex. W). The court noted that Petitioner made his claim for relief under Rule 32.1(c) as a sentence not authorized by law, which did not fall under any of the exceptions to Rule 32.2(a).[8] The court further noted that preclusion does not apply if the claim is of sufficient

---

[8] Former Rule 32.2(a) (effective through September 1, 2017) stated:
>    A defendant shall be precluded from relief under this rule based upon any ground:
>    (1) Raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24;
>    (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>    (3) That has been waived at trial, on appeal, or in any previous collateral proceeding.

Former Rule 32.2(b) stated:
>    Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under Rules 32.1(d), (e), (f), (g) and (h) is to be raised in a

constitutional magnitude—involving constitutional rights such as the right to counsel, the right to a jury trial, or the right to be tried by a 12-person jury—unless the petitioner knowingly, voluntarily, and intelligently waived the right. (Ex. W at 43). However, "[i]f the claim implicates a less significant constitutional right, preclusion applies even without a showing that the defendant knowingly, voluntarily, and intelligently waived the right." *Id.* (internal quotations and citations omitted). "In other words, the state may simply show that the defendant did not raise the error at trial . . . and that would be sufficient to show that the defendant has waived the claim." *Id.* The court concluded that Petitioner had a prior Rule 32 and direct appeal and therefore had several opportunities to raise his sentencing claim, and had therefore waived the claims for failing to raise them earlier. As to Petitioner's claim that he was denied effective assistance when counsel on direct appeal and his first Rule 32 petition failed to raise the sentencing claim, the court found that because non-pleading defendants have no constitutional right to counsel in PCR proceedings, a claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding. The court further stated that there was "an infinite quality of regression to this argument; if, with each successive claim, a petitioner could avoid preclusion merely by asserting that all prior counsel were ineffective, Rule 32.2(a)(3) would be stripped of effect." (Ex. W at 43–44) (internal quotations and citation omitted). The court concluded that Petitioner had failed to state a colorable claim for relief and dismissed the petition.

On May 10, 2017 Petitioner's counsel filed a petition for review in the Arizona COA arguing that the trial court had abused its discretion by denying PCR and an evidentiary hearing. (Ex. X). Counsel argued that Petitioner was denied due process because his sentence was illegal under state law, and stated that the reason this claim was not raised earlier was because Petitioner had ineffective assistance of counsel on his direct appeal and

---

successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner. If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

first Rule 32 proceeding.

On August 17, 2017 the COA issued its order granting review and denying relief. (Ex. Y). The court rejected Petitioner's argument that his sentencing claim should not be precluded pursuant to Rule 32.2(a)(3) because he did not waive the claim by failing to raise it previously because the claim was of sufficient constitutional magnitude to require his knowing, voluntary, and intelligent waiver. The court noted that the waiver principles discussed in the comment to Rule 32.2(a)(3) and Arizona case law do not apply to untimely proceedings, and "this successive proceeding is patently untimely." (Ex. Y at 66–67). Thus, Petitioner "was only entitled to raise claims pursuant to Rule 32.1(d) through (h) . . . [and h]is claim of an illegal sentence (and his related claim the illegal sentence violated his due process rights) fall within Rule 32.1(a) and (c) and thus cannot be raised in this proceeding." (Ex. Y at 67). The court thus found that the trial court did not err in summarily rejecting the claims. As to Petitioner's claims of IAC, the court found that the claim of ineffective assistance of appellate counsel could not be raised in the untimely proceeding, and that a non-pleading defendant is not entitled to raise a claim of ineffective assistance of Rule 32 counsel.

Petitioner filed a petition for review to the Arizona Supreme Court, which the court denied on January 4, 2018. (Doc. 1 at 20). The COA issued its mandate on March 2, 2018.[9]

**D. Habeas Petition**

Petitioner filed his PWHC on January 18, 2018. (Doc. 1). In Ground One, Petitioner alleges that he was denied due process and his rights under the Sixth and Fourteenth Amendments were violated because the trial court imposed an illegal sentence. In Ground Two, Petitioner argues that he was denied effective assistance of counsel at trial, on direct appeal, and during his first PCR proceedings in violation of the Sixth and Fourteenth Amendments because if counsel had raised his sentencing claim, Petitioner would have been entitled to resentencing.

Respondents contend that the PWHC is untimely. (Doc. 7). Respondents further

---

[9] The undersigned located this information in the dockets for Petitioner's cases in Pima County Superior Court and the Arizona COA.

allege that even if the petition were timely, Petitioner's claims are procedurally defaulted and that Petitioner has failed to show cause and prejudice to excuse the default of his claims.

For the reasons stated below, the undersigned finds that the PWHC was timely filed. However, Petitioner's claims are unexhausted and procedurally defaulted or otherwise non cognizable on habeas and thus not properly before this Court for review. Accordingly, the undersigned recommends that the District Court deny and dismiss the Petition with prejudice.

## II.   STATUTE OF LIMITATIONS

### A. Timeliness

As a threshold matter, the Court must consider whether Petitioner's PWHC is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244. The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). The other subsections being inapplicable here, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1929 (2013).

Petitioner was sentenced on November 4, 2013 and timely filed a direct appeal. On January 30, 2015, the COA reversed Petitioner's conviction for attempted second degree murder and remanded for further proceedings on that charge, and affirmed Petitioner's remaining convictions and sentences. The State filed a petition for review to the Arizona Supreme Court, which was denied on May 27, 2015. Because no petition for certiorari was filed in the United States Supreme Court within 90 days of the Arizona Supreme Court's order denying review, Petitioner's judgment became final on August 25, 2015 within the meaning of 28 U.S.C. § 2244(d)(1)(A). *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Thus, absent any tolling, the one-year limitations period would have commenced on August 25, 2015 and expired on August 25, 2016. *See Bowen*, 188 F.3d at 1159 ("when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.").[10]

**B. Statutory Tolling**

The one-year limitation period under AEDPA is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002). An application for state post-conviction relief is "'*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" including "the time limits upon its delivery

---

[10] Even if Petitioner's judgment did not become final for purposes of 28 U.S.C. § 2244(d)(1)(A) until after the trial court granted the State's motion to dismiss the attempted second degree murder charge on September 21, 2015, it would not affect the undersigned's analysis because, as discussed below, in either case, Petitioner's first PCR notice was filed before his judgment became final.

. . .” *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). If a state court rejects a petitioner's PCR petition as untimely, it cannot be "properly filed" and the petitioner is not entitled to statutory tolling. *Allen v. Sibert*, 552 U.S. 3, 6–7 (2007) ("Whether a time limit is jurisdictional, an affirmative defense, or something in between, it is a 'condition to filing[.]'"); *Pace v. DiGuglielmo*, 544 U.S. 408, 417–418 (2005) (holding that "time limits, no matter their form, are 'filing' conditions").

In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed, even though the petition is not filed until later. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004); *see also* Ariz. R. Crim. P. 32.4(a) ("A proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred."). An application for state post-conviction relief remains pending for purposes of § 2244(d)(2) "as long as the ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002). State law determines the conclusion of collateral review and thus state law also determines the conclusion of statutory tolling under the AEDPA. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007). "[W]hen the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is pending until the date the appellate court issues its mandate." *Wells v. Ryan*, 2015 WL 9918159, at *8–*9 (D. Ariz. Aug. 13, 2015), *report and recommendation adopted by* 2016 WL 319529 (D. Ariz. Jan. 27, 2016) (collecting cases and citing Ariz. R. Crim. P. 31.23 and 32.9(g)); *Ramon v. Ryan*, 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (same). However, where the petitioner does file a petition for review with the Arizona Supreme Court, "the collateral proceeding '[is] determined' . . . when the Arizona Supreme Court denie[s] [the] petition for review" and the statute of limitations begins to run again on the date that the court denies review. *Hemmerle*, 495 F.3d at 1077 (noting that after the Arizona Supreme Court

1   denied review, "[t]here was nothing left for [the court] to do" and "nothing remained

2   'pending' for purposes of § 2244(d)(2).").

3          Here, Petitioner timely filed his first notice of PCR on April 21, 2015. Because

4   Petitioner's PCR action was initiated before the conclusion of his direct appeal, the

5   AEDPA statute of limitations was tolled pursuant to § 2244(d)(2) until the conclusion of

6   Petitioner's PCR action. The trial court denied PCR on June 16, 2016. Petitioner filed a

7   petition for review with the Arizona COA, and on November 23, 2016 the COA issued its

8   decision granting review and denying relief. Petitioner did not file a petition for review

9   with the Arizona Supreme Court, and the COA issued its mandate on March 1, 2017.[11]

10  Thus, Petitioner's properly filed PCR proceeding remained pending until March 1, 2017,

11  when the COA issued its mandate. Petitioner had one year from that date to file his federal

12  habeas petition. Accordingly, Petitioner's January 18, 2018 PWHC is timely.[12, 13]

13  **III.    STANDARD OF REVIEW**

14         The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the

15  federal court's power to grant a petition for a writ of habeas corpus on behalf of a state

16  prisoner. First, the federal court may only consider petitions alleging that a person is in

17  state custody "in violation of the Constitution or laws or treaties of the United States." 28

18  U.S.C. § 2254(a). Sections 2254(b) and (c) provide that the federal courts may not grant

19  habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies.

20  Additionally, if the petition includes a claim that was adjudicated on the merits in state

21  court proceedings, federal court review is limited by section 2254(d).

22  _____

23  [11] As noted above, Respondents omitted this information from the Answer and attached exhibits, despite this Court's service order directing Respondents to attach portions of the record relevant to affirmative defenses. *See* Doc. 4 at 3.

24  [12] The undersigned rejects Respondents' argument that Petitioner's first PCR proceeding only remained pending until the COA issued its order granting review and denying relief,

25  and that the statute of limitations began to run upon the issuance of that order and ran uninterrupted until it expired one year later. *See Wells*, 2015 WL 9918159, at *8–*9; *see*

26  *also Dixon v. Ryan*, 2018 WL 3215655, at *2–*3 (D. Ariz. Apr. 2, 2018), *report and recommendation adopted*, 2018 WL 3209417 (D. Ariz. June 29, 2018) (citing *Wells* and

27  finding that the statute of limitations did not begin to run until the COA issued its mandate, and rejecting respondents' argument that the statute of limitations began to run on the day that the time for petitioner to seek review in the Arizona Supreme Court expired).

28  [13] Thus, because Petitioner's PWHC was timely filed, Petitioner's second PCR proceedings have no effect on the timeliness calculation.

**A. Exhaustion**

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona COA, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F.Supp.2d 925, 931–33 (D. Ariz. 2007).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

However, "[a] habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually

exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, *4 (D. Ariz. March 23, 2009). "If no state remedies are currently available, a claim is technically exhausted," but, as discussed below, the claim is procedurally defaulted and is only subject to federal habeas review in a narrow set of circumstances. *Garcia v. Ryan*, 2013 WL 4714370, *8 (D. Ariz. Aug. 29, 2013).

**B. Procedural Default**

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (internal quotations and citation omitted); *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice

from a violation of federal law."). Cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule . . . [such as] a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

The Court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991). Additionally, a habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028.

## C. Adjudication on the Merits and § 2254(d)

The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision was

contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 565 U.S. 34, 38 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86 (2011). This standard is "difficult to meet." *Richter*, 562 U.S. at 102. It is also a "highly deferential standard for evaluating state court rulings . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

## IV.   ANALYSIS

Petitioner alleges two grounds for relief. However, for the reasons explained below, the undersigned finds that all of Petitioner's claims are barred from this Court's review. As to Ground One, Petitioner failed to properly present the federal basis of his claim to the state courts because Petitioner did not make any specific federal constitutional arguments regarding his sentencing claims. As to Ground Two, sub claim A, Petitioner fails to provide a factual basis in support of this claim. As to sub claim B, although Petitioner did present this claim to the state courts, the claim was found to be precluded and untimely and thus expressly procedurally barred. Finally, as to sub claim C, to the extent that Petitioner alleges ineffective assistance of PCR counsel as an independent claim for relief, such a claim is not cognizable on habeas review. To the extent that Petitioner alleges ineffective assistance of PCR counsel as cause to excuse the procedural default of his federal habeas claims, Petitioner has failed to meet his burden under *Martinez v. Ryan*, 566 U.S. 1 (2012). Accordingly, the undersigned finds that Petitioner's claims are unexhausted and procedurally defaulted and not properly before this Court for review.

### A. Ground One

In Ground One, Petitioner alleges that he received an illegal sentence not authorized by law in violation of the Arizona and United States Constitutions and his due process rights under the Sixth and Fourteenth Amendments. In support of this claim, Petitioner

1    alleges that the victim had no legal right to be at the property at the time of the crimes.

2    Petitioner also attaches a portion of his brief from his second PCR proceedings arguing that

3    his sentence was illegal under Arizona law. In the attached brief, the title of Petitioner's

4    argument is "Defendant was denied due process of law because he received an illegal

5    sentence not authorized by law." (Doc. 1 at 7). The substance of Petitioner's argument

6    focuses on Arizona case law and Ariz. Rev. Stat. § 13-701D, use of aggravating factors in

7    sentencing. Petitioner did not argue during his second PCR proceedings that his sentence

8    violated either controlling United States Supreme Court law or the United States

9    Constitution.

10       To properly exhaust a claim, a petitioner must "give the Arizona courts a 'fair

11   opportunity' to act on his federal [] claim before presenting it to the federal courts." *Castillo*

12   *v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2004). Here, Petitioner's passing reference to

13   due process is insufficient to fairly present the federal, constitutional nature of his claim to

14   the state courts. *Castillo*, 399 F.3d at 1002–03 ("Exhaustion demands more than drive-by

15   citation, detached from any articulation of an underlying federal legal theory."); *Hivala*,

16   195 F.3d at 1106 ("general appeals to broad constitutional principles, such as due process,

17   equal protection, and the right to a fair trial, are insufficient to establish exhaustion."). A

18   petitioner does not satisfy the exhaustion requirement "by presenting the state courts only

19   with the facts necessary to state a claim for relief[;]" the specific constitutional right

20   allegedly violated must also be identified. *Grey v. Netherland*, 518 U.S. 152, 162–63

21   (1996); *see also Shumway v. Payne*, 223 F.3d 982, 998 (9th Cir. 2000) (a claim is not

22   "fairly presented" to the state court unless the petitioner "specifically indicated to that court

23   that those claims were based on federal law").[14] The crux of Petitioner's argument during

24   ───────────────────────

25   [14] As this Court has explained:

26           Fair presentation requires a petitioner to describe both the
         operative facts and the federal legal theory to the state courts.
27       *Reese*, 541 U.S. at 28, 124 S. Ct. 1347. It is not enough that all
         of the facts necessary to support the federal claim were before
28       the state court or that a "somewhat similar" state law claim was
         raised. *Reese*, 541 U.S. at 28, 124 S. Ct. 1347 (stating that a
         reference to ineffective assistance of counsel does not alert the

his second PCR proceedings was a state law issue—that the trial court improperly considered aggravating factors at sentencing that were also elements of the crime, in violation of Ariz. Rev. Stat. § 13-701D. Petitioner did not state a factual basis for this claim under any federal constitutional provisions or United States Supreme Court cases. Thus, Petitioner failed to properly present the federal basis for his claim to the state courts.[15]

Further, in dismissing Petitioner's second PCR petition, the trial court specifically found that Petitioner's claims were precluded under Rule 32.2(a) and that Petitioner had waived his sentencing claims because he had several opportunities to present them earlier. In its order granting review and denying relief, the COA noted that in a successive Rule 32 petition, a defendant is only permitted to raise claims arising under Rule 32.1(d)–(h). The COA found that Petitioner's sentencing claim fell under Rules 32.1(a) and (c) and therefore

---

court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir.2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162–63, 116 S. Ct. 2074, 135 L.Ed.2d 457 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts...." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27, 124 S. Ct. 1347.

*Date v. Schriro*, 619 F.Supp.2d 736, 764–65 (D. Ariz. 2008); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").

[15] Petitioner also cannot transform his state law claims into federal ones merely by asserting a violation of due process. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

could not be raised in Petitioner's "patently untimely" second PCR petition. Thus, even if Petitioner had fairly presented the federal, constitutional basis of his claims to the state courts, the courts applied an express procedural bar. *See* Ariz. R. Crim P. 32.2(a), 32.2(b); *see also High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) (where state form instructs petitioner to relate facts demonstrating good cause for delay in timely filing petition, and state court denies petition as untimely, federal court will accept state court's finding that there was not good cause for the delay and bar relief).

Accordingly, Ground One is both unexhausted and expressly procedurally defaulted and not properly before this Court for review.

**B. Ground Two**

i.     Ineffective assistance of trial counsel

In Ground Two sub claim A, Petitioner argues that he received ineffective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. In support of this claim, Petitioner attaches a portion of his brief from his second PCR petition. However, in that brief, Petitioner only argued that his counsel on direct appeal and his first PCR proceeding were ineffective for failing to raise his sentencing claim. Asserting an IAC claim "based on one set of facts [presented to the state courts], does not exhaust other claims of ineffective assistance of counsel based on different facts" that were not presented to the state courts. *Date v. Schriro,* 619 F. Supp. 2d 736, 788 (D. Ariz. 2008); *see also Moormann v. Schriro*, 426 F.3d 1044, 1056–57 (9th Cir. 2005) (new allegations of IAC not previously raised before the state court cannot be addressed on habeas review). Further, because Petitioner has alleged no facts or argument in his PWHC supporting a claim of ineffective assistance of trial counsel, the Court is unable to determine the factual basis of this claim. Accordingly, the undersigned finds that Petitioner's sub claim A is unexhausted and not properly before this Court for review.

ii.     Ineffective assistance of appellate counsel

In Ground Two sub claim B, Petitioner alleges that he received IAC on direct appeal in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. In support

of this claim, Petitioner attaches a portion of his brief from his second PCR petition arguing that counsel on direct appeal was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1965), for failing to raise the sentencing issue when it was "a clear statutory violation" that no competent counsel would have ignored. (Doc. 1 at 15–16). Thus, Petitioner presented this specific, federal claim to the trial court during his second PCR proceedings.

In dismissing Petitioner's second PCR petition, the trial court found that Petitioner failed to state a colorable claim for relief, but did not specifically address Petitioner's argument that he received IAC on direct appeal. In his petition for review to the Arizona COA, Petitioner did not specifically argue any IAC claims. Rather, Petitioner only argued his sentencing claim, and stated that the reason he had not raised the sentencing claim earlier was because of ineffective assistance on direct appeal and his first PCR proceedings. In its order granting review and denying relief, the COA noted Petitioner's argument that appellate and Rule 32 counsel were ineffective for failing to raise the sentencing claim, but found that Petitioner could not raise a claim of ineffective assistance of appellate counsel in an untimely proceeding, citing Rules 32.1(a) and 32.4(a). Thus, the COA applied an express procedural bar and this Court is precluded from addressing the merits of Petitioner's sub claim B on habeas review.

### iii.   Ineffective assistance of PCR counsel

In Ground Two sub claim C, Petitioner alleges that he received IAC during his first PCR proceeding in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. In support of this claim, Petitioner attaches a portion of his brief from his second PCR petition arguing that counsel on his first PCR proceeding was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1965), for failing to raise the sentencing issue when it was "a clear statutory violation" that no competent counsel would have ignored. (Doc. 1 at 15–16). Thus, Petitioner presented this specific, federal claim to the trial court during his second PCR proceedings.

In dismissing Petitioner's second PCR petition, the trial court found that non-pleading defendants have no constitutional right to counsel in PCR proceedings and

therefore a claim that Rule 32 counsel was ineffective was not a cognizable ground for relief in a subsequent Rule 32 proceeding. In his petition for review to the Arizona COA, Petitioner did not specifically argue any IAC claims. Rather, Petitioner only argued his sentencing claim, and stated that the reason he had not raised the sentencing claim earlier was because of ineffective assistance on direct appeal and his first PCR proceeding. In its order granting review and denying relief, the COA noted Petitioner's argument that appellate and Rule 32 counsel were ineffective for failing to raise the sentencing claim, and agreed with the trial court that Petitioner was not entitled to raise a claim of ineffective assistance of Rule 32 counsel.

The undersigned finds that to the extent Petitioner alleges sub claim C as an independent ground for relief, such a claim is not cognizable on habeas review. *See* 28 U.S.C. § 2254(i) ("the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief"); *Coleman*, 501 U.S. at 752 (because there is no constitutional right to an attorney in PCR proceedings, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings"). Construing Petitioner's pleadings liberally, to the extent that Petitioner alleges ineffective assistance of PCR counsel as cause to excuse the procedural default of his federal habeas claims, the undersigned finds that *Martinez v. Ryan*, 566 U.S. 1 (2012), does not excuse Petitioner's default.[16]

In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9.[17] *Martinez* only provides cause for defaults that are caused by PCR counsel. Thus, in order for a petitioner to rely upon

---

[16] It is not clear from Petitioner's pleadings that he is actually asserting IAC during his first Rule 32 proceeding to excuse the procedural default of any of his habeas claims. However, because Petitioner alleged during his second PCR proceeding that counsel on his first PCR proceeding was ineffective for failing to raise the sentencing claim, the undersigned briefly addresses this issue here.

[17] In Arizona, "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial[.]" *Martinez*, 566 U.S. at 11; *see also State ex rel. Thomas v. Rayes*, 153 P.3d 1044, 1043–44 (2007) (ineffective assistance of trial counsel claims may only be raised in Rule 32 PCR proceedings).

*Martinez* to excuse the procedural default of his claims, the petitioner must "demonstrat[e] two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, . . .' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012)  (quoting *Martinez*, 132 S. Ct. at 1318); *see also Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("In order to show ineffectiveness of PCR counsel, [a petitioner] must show that PCR counsel's failure to raise the claim that trial counsel was ineffective was an error 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' and caused [the petitioner] prejudice." (quoting *Strickland*, 466 U.S. at 687)). Further, *Martinez* only applies to excuse the default of a claim of ineffective assistance of trial counsel. 566 U.S. at 9, 16 (*Martinez's* holding "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review"). Here, only Ground Two sub claim A alleges ineffective assistance of trial counsel, and, as discussed above, Petitioner fails to present a factual basis for sub claim A.

Accordingly, the undersigned finds that Petitioner's sub claim C is not cognizable on habeas and thus not properly before this Court for review, and does not constitute cause to excuse the procedural default of Petitioner's habeas claims.

## C. Effect of Procedural Bar

Claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are

1   independent of federal law, either their specific application to a claim by an Arizona court,

2   or their operation to preclude a return to state court to exhaust a claim, will procedurally

3   bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart v.*

4   *Smith*, 536 U.S. 856, 860 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998)

5   (Rule 32 is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (waiver

6   and preclusion rules strictly applied in post-conviction proceedings).

7        As discussed above, Petitioner's claim in Ground Two, sub claim B, is precluded

8   because the COA applied an express procedural bar. Petitioner's claims in Ground One

9   and Ground Two, sub claim A, are unexhausted, and Arizona Rules of Criminal Procedure

10  regarding timeliness and preclusion prevent Petitioner from now exhausting those claims

11  in state court. Accordingly, the claims are both technically exhausted and procedurally

12  defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d

13  at 931–33; *Coleman*, 501 U.S. at 732, 735 n.1; *Garcia*, 2013 WL 4714370 at * 8. Finally,

14  Petitioner's claim in Ground Two, sub claim C, is not cognizable on habeas review.

15  **D. Cause and Prejudice**

16       A federal court may not consider the merits of a procedurally defaulted claim unless

17  the petitioner can demonstrate cause for his noncompliance and actual prejudice, or

18  establish that a miscarriage of justice would result from the lack of review. *See Schlup v.*

19  *Delo*, 513 U.S. 298, 321 (1995). Both cause and prejudice must be shown to excuse a

20  procedural default, but the Court is not required to examine the existence of prejudice if

21  the petitioner fails to establish cause. *Engle v. Issac*, 456 U.S. 107, 134 n.43 (1982);

22  *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991). Here, Petitioner has failed to

23  show cause for, or prejudice arising from, the procedural default of his claims, and the

24  Court can glean none from the record before it. *See Martinez*, 132 S. Ct. at 1316; *Murray*,

25  477 U.S. at 488. There was no objective factor external to Petitioner's defense that impeded

26  his efforts to comply with the state's procedural rules; Petitioner simply failed to raise his

27  claims to the state courts in a timely and procedurally appropriate manner.[18] Accordingly,

28  ---

[18] To the extent that Petitioner argues that the state courts wrongly dismissed his sentencing claim in his second PCR proceeding as precluded and time-barred, this argument fails.

because Petitioner has failed to establish cause to excuse the procedural default of his claims, the Court need not examine the merits of Petitioner's claims or the purported prejudice.

## V.   RECOMMENDATION

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be DENIED because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-18-071-TUC-JAS**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 12th day of August, 2020.

Eric J. Markovich
United States Magistrate Judge

---

During Petitioner's second PCR proceedings, Petitioner argued that his sentencing claim was not precluded under Rule 32.2(a) because it was based on Rule 32.1(c). However, as the COA noted in its decision, the Rule 32.2(b) exception to preclusion only applies to claims brought under Rule 32.1(d)–(h). Because Petitioner's claim of an illegal sentence fell within Rule 32.1(a) and (c), it was not exempt from preclusion and therefore could not be raised in an untimely Rule 32 proceeding.